[890 NYS2d 474]

In the Matter of CARLYET D. MARSHBURN (Admitted as CARLYET DANNIE MARSHBURN), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, November 19, 2009

**APPEARANCES OF COUNSEL**

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Vitaly Lipkansky* of counsel), for petitioner.

*Jonathan Marks* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Carlyet D. Marshburn was admitted to the practice of law in New York by the Second Judicial Department on December 23, 1981, under the name Carlyet Dannie Marshburn. At all times relevant herein, respondent has maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee now moves pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) (2) to disaffirm that part of the Hearing Panel's determination which recommended respondent be publicly censured and, instead, to suspend respondent from the practice of law for a period of six months.

By cross motion, respondent seeks an order pursuant to 22 NYCRR 605.15 affirming the determination of the Hearing Panel, including the recommendation of censure, and opposing the Committee's motion to suspend him.

In 2001, respondent entered into a partnership with Gwenerva Cherry and together they created the law firm Cherry & Marshburn, LLP (the firm). In late February 2006, respondent learned from one of Cherry's clients that a $507,000 check written by Cherry from the escrow account had bounced. When respondent checked with the bank, he discovered that approximately $42,000 remained in the account, that there was a deficit of nearly $665,000, and that Cherry had withdrawn a substantial portion of the funds via electronic transfers. Respondent terminated the partnership, and alerted the Disciplinary Committee and the New York County District Attorney's Office.

As part of its investigation, the Committee performed an audit of the firm's IOLA account from September 1, 2005 through March 31, 2006. The audit revealed that for every day of that period, the balance in the account was below the amount required to be on deposit and the overall deficit for the period was approximately $702,143. During this time period, while unaware that the account was in deficit, respondent negotiated checks written to him by Cherry and wrote some checks to clients and third parties. Furthermore, on one occasion, respondent withdrew IOLA funds for his own personal use when he knew that the account was in a deficit.

The Committee served respondent with a notice and statement of three charges alleging that by making disbursements

from his law firm's IOLA account to himself and others when the account showed a deficit he misappropriated client and/or third party funds in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46); and by failing to review or oversee the record keeping for his law firm's IOLA account he failed to discover and/or prevent the unauthorized invasion of client and/or third party funds by his law partner, thereby engaging in conduct that adversely reflected on his fitness as an attorney in violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) (two counts).

Thereafter, respondent and the Committee entered into a prehearing stipulation wherein respondent admitted to liability as to each charged violation of the Code, as amended. To that extent, charge one was amended to include the language that "respondent *unintentionally* misappropriated client and/or third party funds, in violation of DR 9-102 (a)," to confirm that respondent was not being charged with intentional conversion. At the hearing and in posthearing submissions, the Committee recommended respondent be suspended from the practice of law for a period of six months, while respondent only sought private reprimand.

Since respondent admitted liability, the Referee sustained the charges and focused the hearing on evidence in mitigation and aggravation. In recommending public censure, the Referee noted in mitigation: respondent's lack of a disciplinary history; his work for community organizations early in his career as well as his work in the public sector; his "contrition, and [that] he gave every possible indication of complete candor"; and his impressive character references. The Referee found no basis in the case precedent for the Committee's recommendation of a six-month suspension, terming it "draconian," and noted that it would be "a terrible blow to respondent's one-man practice."

A Hearing Panel concurred with the Referee's sanction recommendation. The Committee now moves to disaffirm in part the determination of the Hearing Panel. In support of its recommendation, the Committee advances several facts in aggravation of respondent's conduct, including, inter alia, the "massive pillaging" of the IOLA account of more than $700,000 (approximately $631,000 by Cherry and $69,000 in unintentional misappropriation by respondent) which the Committee asserts would not have been possible had respondent not "abdicated his fiduciary duty" to oversee the escrow account.

For the reasons set forth below, we find that the Hearing Panel carefully weighed the totality of the circumstances in

reaching its determination to publicly censure rather than suspend or privately sanction respondent, and we affirm its determination.

Partner Cherry's conversion occurred over a relatively short period of six months (approximately September 2005—February 2006), and respondent purportedly wrote only six checks, all of which were for legitimate obligations. When respondent wrote those checks, he was unaware the payments were improper. Moreover, respondent was charged and admitted his liability for his failure to oversee the account.

Furthermore, we disagree with the Committee's assertion that respondent's "willful ignorance [of the conversion] is clearly unjustifiable in a two-person law firm" and thus warrants more than a public censure. In *Matter of Glatman* (47 AD3d 230, 232 [2007]) the Court found censure appropriate when misappropriation of funds was "the result of either inadvertence or poor accounting practices, as opposed to an intent to steal funds." In *Matter of Cardoso* (152 AD2d 157 [1989]) an attorney in a two person law firm was censured for one act of unintentional "conversion" of funds by properly disbursing funds when, unbeknownst to him the account was at a deficit, and for his law partner's commingling and intentional conversion of approximately $31,000. In addition, the respondent in *Cardoso*, like respondent herein, left all handling of the escrow account to his partner, and once aware of the acts, dissolved the partnership and notified the Grievance Committee of his partner's defalcations (*see also Matter of Linn*, 200 AD2d 4 [1994]; *Matter of Falanga*, 180 AD2d 83 [1992]).

Finally, the Committee's reliance on *Matter of Latimore* (252 AD2d 217 [1999], *lv dismissed* 93 NY2d 995 [1999]) is misplaced. In *Latimore*, this Court suspended the attorney for one year for presigning several blank escrow checks requiring her signature and that of another attorney, thereby enabling her cofiduciary to convert escrow funds. She failed to oversee the escrow account and failed to supervise salespeople working under her real estate broker's license who engaged in fraudulent practices. Additionally, she personally engaged in misleading practices in her brokerage and had received two prior letters of admonition.

Here, except for respondent's withdrawal of approximately $12,000 of his own funds, respondent's misconduct was that of omission and not affirmative actions like that in *Latimore*. Furthermore, respondent has an unblemished 28-year career

with a history of public service, has shown remorse, has cooperated fully with all governmental authorities, and has accepted full responsibility for his misconduct and stipulated to the charges. Respondent's conduct here fits squarely within the cases in which public censure is imposed.

Accordingly, the Committee's motion to the extent that it seeks to disaffirm that part of the Hearing Panel's determination which recommended censure should be denied, respondent's cross motion should be granted, the findings of fact, conclusions of law and determination of the Hearing Panel should be confirmed in its entirety, and respondent should be publicly censured.

GONZALEZ, P.J., NARDELLI, CATTERSON, MOSKOWITZ and RENWICK, JJ., concur.

Respondent publicly censured.